UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 10-82-GWU

TAMMY BOSCHERT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Tammy Boschert brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Boschert,[1] a 44-year-old woman, suffered from impairments related to headaches, neck problems, tendon and ankle problems, coronary artery disease, and a mental disorder.  (Tr. 15-16).  However, the ALJ determined that these impairments would not significantly limit her ability to perform work activities for at least a 12-month period and, so, would not be considered to be "severe."  (Tr. 15).  Therefore, the claimant could not be considered totally disabled within the meaning of the Social Security Act.  (Tr. 20).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence.  However, the current record does not mandate an immediate award of Social Security benefits.  Therefore, the court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

As previously noted, the ALJ determined that the Boschert's problems related to headaches, neck problems, tendon and ankle problems, coronary artery disease

---

[1] The plaintiff changed her last name from Lewis to Boschert at some point during the processing of her Social Security claim.  The April, 2007 DIB and SSI filings list her name as Lewis.  (Tr. 98, 103).  When Page Beetem withdrew as her legal counsel in October of 2009, the claimant is referred to as Tammy Lewis Boschert.  (Tr. 4).

and a mental disorder were non-severe because they would not impose significant limitation on her activities for a one-year period. (Tr. 18). Thus, these impairments did not meet the one-year duration requirement of the administrative regulations. 20 C.F.R. § 404.1509. The plaintiff alleged a disability onset date of August 11, 2006 on her DIB application and, so, she must show that at least one of her alleged impairments lasted for at least one year between this date and the September 10, 2009 date of the ALJ's denial decision.

Review of the medical record suggests that Boschert did suffer from a back problem which met the one-year duration requirement and, so, constituted a "severe" impairment. A June, 2006 lumbar MRI revealed a focal central protrusion at L5-S1 with peripheral annular tear, minimal diffuse disc bulging and minor foraminal compromise on the left. (Tr. 338). Dr. John Kelly, a treating pain specialist, opined that the plaintiff's problem with severe hip pain was related to her lumbar spine injury. (Tr. 343). Steroid injections in July, August and September of 2006 were said to reduce but did not eliminate her pain. (Tr. 351-354). Physical therapy was noted to be helping the claimant in January of 2007. (Tr. 366). Dr. Kelly indicated back and hip pain were "nearly" resolved in February, April and May of 2007. (Tr. 372, 377, 380). Nevertheless, in July of 2007, Dr. Kelly identified extremely severe physical restrictions which he related in part to the patient's back problems. (Tr. 384-388). In October of 2007, Boschert was treated for back pain with radiation into the leg at St. Elizabeth Hospital. (Tr. 443). Mild to moderate

muscle spasm and an abnormal straight leg raising were reported upon physical examination. (Tr. 445). Dr. Carlos Hernandez, medical reviewer, opined in August of 2007 that the plaintiff did not suffer from a "severe" physical impairment, but he did not have the opportunity to see a complete record and specifically did not see the October, 2007 report from St. Elizabeth.

An impairment may be considered "not severe" only if it is no more than a "slight abnormality" having only a minimal effect on the claimant's ability to perform work activities. Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Since the current record suggests that the back problems imposed more than minimal effects on Boschert for more than one year, this low stand was met with regard to this impairment. Therefore, a remand of the action for further consideration of the plaintiff's back problems is required.

Boschert also argues that the ALJ erred in rejecting the opinion of Dr. Kelly. Dr. Kelly opined that the plaintiff would be restricted to less than a full range of sedentary level work. (Tr. 384-388). The ALJ rejected this opinion because he felt it was unsupported by the doctor's own treatment records which revealed largely negative testing results and was inconsistent with other evidence of record. (Tr. 19). While the court agrees that these severe restrictions would not be fully binding, as previously noted, at least some evidence suggests that the claimant's back problems were "severe" and, so, would impose some limitations on her. Dr. Hernandez was the only physician to specifically contradict Dr. Kelly's findings and

he was a non-examiner.  Social Security Ruling 96-6p indicates that an ALJ should only credit the opinion of a non-examiner over that of a treating source when the non-examiner has seen a <u>complete</u> record containing more detailed and comprehensive information than that available to the treating source.  Dr. Kelly saw the record on August 2, 2007 and, so, did not see the medical reports submitted after this date.  Furthermore, the doctor also does not appear to have even seen Dr. Kelly's July 27, 2007 assessment since he makes no mention of it in the section of his report when commenting about evidence from the treating sources.  (Tr. 389).  The ALJ should at least have sought the advice of a medical expert who had seen a complete record.  Under these circumstances, the undersigned finds that the ALJ failed to deal properly with the opinion of Dr. Kelly.

Boschert raises a number of other issues with which the undersigned does not agree.  The plaintiff asserts that her breathing problems were a "severe" impairment meeting the duration requirement as well.  She notes a history of treatment for chronic obstructive pulmonary disease and a September, 2006 pulmonary function test which revealed a mild restrictive ventilatory defect and mild diffusing capacity defect. (Tr. 285). An October, 2007 pulmonary function indicated that her diffusing capacity defect had progressed to a moderate level.  (Tr. 455).  However, the record reveals that despite the claimant's breathing problems, she continued her cigarette smoking habit at least until the spring of 2009.  (Tr. 27).  In <u>Mullins v. Secretary of Health and Human Services</u>, 836 F.2d 980 (6th Cir. 1987),

the court found that in view of a claimant's continued smoking habit, "it was difficult to invision [sic] a severe and environmental restriction imposed by a pulmonary condition." Id. at 985.  Therefore, the plaintiff's breathing problems would not appear to have been severe.

Boschert disputes the ALJ's finding that cervical spine pain and headaches were not a "severe" impairment since these did not meet the duration requirement. The plaintiff cites complaints for this problem and the treatment she received in June, 2006 (Tr. 347), October, 2006 (Tr. 358), December, 2006 (Tr. 362), January, 2007 (Tr. 366), April, 2007 (Tr. 374, 376), and May, 2007 (Tr. 380).  The claimant notes that Dr. Kelly reported that headaches and neck pain were still a problem in July of 2007.  (Tr. 384).  However, the record does not reveal treatment for this condition after May of 2007.  Dr. Kelly repeatedly indicated that Boschert's main limitation concerned her arm pain.  (Tr. 370, 374).  Therefore, the court finds no error with the ALJ's determination that this was not a "severe" impairment.

Boschert also asserts that her right elbow impairment persisted for sufficient time to meet the one-year duration requirement.  The ALJ concluded that this problem was not "severe" for the required one-year period since the plaintiff's April, 2007 surgery for right elbow release and partial ostectomy was successful in alleviating most of her symptoms. (Tr. 18-19).  The claimant disputes this finding, noting that the accident in which she injured her arm occurred in July of 2005,  so this problem would have been severe for almost two years.   (Tr. 342).  However,

Boschert only alleged disabled status as of August 11, 2006.  Dr. Brion Moran, her treating surgeon, did not impose permanent restrictions on the plaintiff and she did not return to him after May of 2007.  (Tr. 340-342).  While Dr. Kelly noted pain complaints in May of 2007, he indicated that it was too early to distinguish post-operative pain from her prior condition.  (Tr. 378).  Therefore, the court finds no error.

Boschert argues that the ALJ failed in his duty to properly develop the administrative record as required by Lashley v. Secretary of Health and Human Services, 708 F.2d 1048 (6th Cir. 1983).  The plaintiff asserts that her representative at the administrative hearing, Page Beetem, was unable to update the medical record beyond May, 2007 despite requesting additional time in her pre-hearing statement to obtain the additional documents.  (Tr. 96).  However, the record indicates that medical exhibits were submitted into evidence dated through March of 2009. (Tr. 420-521). This fact directly contradicts the claimant's assertion. At the hearing, Beetem expressed concern that 100 pages of medical evidence she had submitted did not show up on the CD containing the copy of the record provided to her, and this omission was the reason for the additional time request in the pre-hearing statement.  (Tr. 26).  The ALJ later determined that this evidence had been received by his office and it was entered into the record as Exhibit 13F.  (Tr. 30). Thus, the attorney does not seem to have had the difficulty obtaining medical records alleged by Boschert in her legal memorandum to the court.  The record

indicates that Beetem requested <u>all</u> the medical records from various health care providers of the claimant dated between January of 2007 and May of 2009 during the course of her representation. (Tr. 404, 420). She did not indicate to the ALJ having problems with the medical sources providing records and she did not request his assistance in obtaining medical evidence beyond her concerns about the records which were introduced as Exhibit 13F. Beetem withdrew from the case shortly after the administrative denial decision was issued and Boschert's new representative, Shoshana Pehowic, did not submit additional evidence which had been overlooked by Beetem either to the Appeals Council or the federal district court. Ultimately, the plaintiff had the burden of providing sufficient evidence to prove her disability claim under the administrative regulations at 20 C.F.R. § 404.1512(a). Under these circumstances, the court finds no error.

Boschert also alleges that the ALJ erred in developing the record by failing to ask questions of her during the administrative hearing. However, review of the administrative transcript reveals that the ALJ asked the plaintiff a number of basic questions at the start of the hearing concerning her address, height, weight, and driving status.[2] (Tr. 28-29). The ALJ then entered into a discussion with the

---

[2] Administrative transcripts can occasionally be confusing as to who is questioning a claimant. However, the transcript in this action reads "Examination of Claimant by Administrative Law Judge" at the top of page 28. (Tr. 28). Only at the bottom of page 30 does the record indicate that the legal representative took over the questioning. (Tr. 28-30).

claimant concerning her problems with neck stiffness, difficulty with concentration, problems interacting with others and general changes to her personality. (Tr. 29-30). At this point, the ALJ allowed Boschert's legal representative to extensively question her, developing testimony as to her alleged mental problems, living arrangements, daily activities, work background, musculoskeletal problems, headaches, problems with sleep, breathing difficulties, and medications utilized. (Tr. 30-57). The undersigned, who has some 30 years of experience reviewing Social Security disability appeals, notes that ALJs routinely allow a claimant's representative to take the lead in developing the record by questioning their clients at the administrative hearing. The plaintiff cites no statute, case law or administrative regulation prohibiting such an approach to developing the administrative record. The important issue is whether Boschert's claims were fully developed and set before the ALJ rather than if the ALJ personally asked her the questions. Therefore, the court finds no error.

The ALJ's denial decision was signed by Don Paris for Jimmy Coffman, the ALJ who conducted the hearing. (Tr. 21). The plaintiff suggests that this was improper. The Hearing, Appeals and Litigation Law Manual (HALLEX) provides specific procedures to be followed when another hearing officer signs the final decision rather the one who oversaw the hearing and authored it. HALLEX § 1-2-8-40 provides that the ALJ must give prior affirmative authorization, which the defendant concedes did not happen in this case. Federal courts are split on the

question concerning whether the HALLEX is legally binding and the undersigned has followed those that have concluded that failure to follow the HALLEX does not require reversal absent a convincing showing of prejudice to the plaintiff.  <u>Caudill v. Astrue</u>, No. 7:09-70-GWU (E.D. Ky, January 14, 2010), citing <u>Moore v. Apfel</u>, 216 F.3d 864, 868 (9th Cir. 2000).  In the present action, the claimant offers only speculation rather than demonstrating how her rights were prejudiced.  Therefore, the court finds no error.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 23rd day of February, 2011.

Signed By:
<u>G. Wix Unthank</u>
**United States Senior Judge**